JOHN E. TUSANT et al., Appellees, v. GRAND LODGE ANCIENT ORDER OF UNITED WORKMEN et al., Appellants.

**TRIAL: Admissibility of Evidence in Equity Causes.** In equity causes,
1 all offered evidence becomes a part of the record, regardless of any specific rulings of the court as to its admissibility.

**INSURANCE: Benefit Insurance—Unlawful Change in Assessments.**
2 The holder of a fraternal beneficiary certificate of insurance (not made subject to subsequent by-laws of the society) which provides for mutual assessments on the members of the order sufficient *only* to pay *current* death losses, may not, without his consent, be charged with assessments sufficient to pay such losses, and, *in addition*, to create a reserve for the payment of *future* death losses. Record reviewed, and *held* that proposed assessments were violative of above rule.

**INSURANCE: Benefit Insurance—Nonmutual Reserve.** Members of a
3 fraternal insurance order who are legally liable to assessments, from

time to time, sufficient only to meet current death losses, and who have legally refused to pay more, may not have their assessments scaled down by resort to a *reserve* fund which has been created by *other* members of the order who have submitted to assessments sufficiently large to pay current death losses and create said reserve fund.

**INSURANCE:** Assessments—Presumption.    An assessment is presumptively correct in amount when, for some 20 years, it has been acquiesced in as fully discharging the certificate holder's liability to meet current death losses.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

JANUARY 17, 1922.

SUIT in equity by the plaintiffs as certificate holders of the principal defendant as a fraternal insurance association, to enjoin it from enforcing a recent by-law, purporting to increase the rates of assessment.    After a trial on the merits, there was a decree for plaintiffs.    The defendants appeal.—*Modified and affirmed.*

*J. A. Lowenberg, E. B. Evans,* and *Opal Boling,* for appellants.

*Miller, Kelly, Shuttleworth & Seeburger,* for appellees.

EVANS, J.—This case is a sequel to a former case, *Tusant v. Grand Lodge A. O. U. W.,* 183 Iowa 489.    The detailed facts then in existence are quite fully set forth in the opinion in that case, and we shall try to avoid undue repetition now.    The result in that case was that the defendant was enjoined from enforcing against the plaintiff certain recent amendments to its by-laws which were calculated to change the fundamental character of the insurance contracted for by the plaintiffs under their certificates, and whereby the rates of assessment against the plaintiff would be materially increased.    After the decision in that case, the defendant caused the repeal of the offending amendments and enacted another, which is known in the record as Section 32, and purported to become effective in June, 1919.    This latter amendment represents an attempt on the part of the defendant lodge to avoid the grounds of objection made and sustained as against the previous amendments.    The plaintiffs, being members of the defendant lodge, bring this suit to restrain the en-

forcement of the latter amendment, on the ground that it infringes upon the adjudication already had. The plaintiffs are 52 in number, and purport to represent 30 other certificate holders similarly situated, all of whom are included in the class which was represented by the plaintiff in the former suit.

The real question in this case is: Does the new by-law meet the objections which were considered and condemned in the former case, or does it run counter to the adjudication therein? Two opening briefs are presented by the appellant. One is presented by new counsel, who were not on the brief in the former case. The usefulness of this brief is greatly impaired by the fact that it is mainly devoted to a condemnation of the former opinion. The day of rehearing is past, and the former opinion is now as binding upon us as it is upon the litigants. If it were not, we are still convinced of the soundness of our former holding.

Specific errors are assigned on rulings in the admission and rejection of testimony. This is an equity case. All offered evidence becomes a part of the record, regardless of any specific rulings of the trial court as to its admissibility. 1. TRIAL: admissibility of evidence in equity causes. We give consideration to such of the evidence as was admissible, and ignore that which was not. The proposition towards which such evidence was directed was settled in the former suit. This was that the defendant was precluded, under Code Section 1741, from showing the contents of the application which preceded the issuance of certificates to the respective plaintiffs, because such application was not attached to the certificates, as required by the statute.

The second brief, presented by the same counsel as appeared upon the former trial, fairly presents what we deem to be the controlling and only question in the case, which question we have already stated. As in the former case, so in this, the plaintiffs stand in court upon their original contract of insurance, as represented by their certificates. These certificates were not made subject to subsequent by-laws, which might materially alter their contract rights. In the former case, we held that the subsequent by-laws then and there under attack did purport to interfere materially with the contract rights of the complaining plaintiffs.

Three particular grounds of complaint were sustained: (1) The division of the membership of the order into two distinct classes, A and B; (2) the fixing of a level rate premium to be paid by the plaintiffs, which was based upon their then age, and in total disregard of the age at which respectively they became members, and of their continuing membership for the previous 25 or 30 years; (3) the change of the fundamental character of the kind of insurance contracted for by the plaintiffs, in that the liability for mutual assessments for death losses only was changed into a liability for old-line insurance, which provided not only for the payment of current death losses, but also for the building up of a large reserve fund.

In order to meet the first of the above specifications, the defendant lodge repealed its offending by-laws, and abolished Classes A and B. With a view of meeting the second specification, the defendant drew upon its reserve, and placed to the credit of the respective certificates of the plaintiffs the sum of $500 each. The effect of this action was to give to each certificate of the respective plaintiffs upon the books of the defendant lodge a paid-up value of $500. For the remaining $1,500 provided by the face of the certificates, it fixed upon a premium rate of $11.55 per month, as being the actuarial estimate of the cost of carrying $1,500 of insurance upon the life of each of the plaintiffs at the age attained by him. We accept this action as a good-faith effort on the part of the officers of the lodge to meet and to avoid such second specific objection. Whether the credit of $500 was a sufficient credit, the record does not disclose: that is to say, it contains no data from which such question could be determined. We shall have no occasion to inquire further into that feature, except as it is incidentally involved in our consideration of the next point.

The remaining question involves the third of the above specifications. Has that objection been removed? Is the defendant now proposing to assess the plaintiffs upon the basis of the current mortality of the order, as provided by their certificates? Or is it proposing to assess the plaintiffs upon the basis of payment of all current death losses, and also an additional sum for the purpose of building up a reserve, which

2. INSURANCE: benefit insurance: unlawful change in assessments.

reserve is to outlive the respective plaintiffs, and perhaps to be available after their death for the payment of their own death losses? .

We held in the former case that the change from the mutual insurance assessment plan to the plan of old-line insurance, whereby a premium was fixed so as to project the ultimate cost of the insurance into the far future, and to provide thereby not only for present current mortality, but for the building up of a reserve, to meet such ultimate cost in the future, was a fundamental change in the plan of insurance and was, therefore, not permissible. That the plan adopted is a sound one may be assumed. Nevertheless, it cannot be imposed upon the plaintiffs without their consent. In our former opinion, we said:

"Mutual insurance has its own natural limitations. It is not the equivalent of what is usually known as 'old-line' insurance. It can give no guarantee. It has no assets, and is entitled to none. Whatever it collects belongs to some beneficiary of a death loss. It has the merit of cheapness and the demerit of uncertainty. It is something less than absolute insurance. Its cheapness is attractive, and the real value of it is often more than commensurate with its cost. The defendant order is one of the time-honored orders of that kind. It has been a real boon to thousands, and ought to so continue for many years to come. We are told that, when it first came into being, it was simply an undertaking by approximately 2,000 persons that, while his membership continued, each would pay a dollar to the beneficiary of every death loss. Such an undertaking could hardly be called insurance, in the 'old-line' sense; but mutual insurance, nevertheless, it was."

The amended by-law of June, 1919, did not purport, in terms, to restore the mutual insurance assessment plan. In our former opinion, we said:

"While the by-laws prior to 1911 fixed a rate of assessment, there never was any limitation in the by-laws as to the number of assessments which might be levied at such rate. So far as the constitution and by-laws were concerned, the only limitation upon the number of assessments was determined by the number of deaths. The power of the order, therefore, to make sufficient assessments to cover the death losses was ample, under the by-laws."

The assessment of the respective plaintiffs prior to 1911 had been $3.85 a month. Responding to that part of our opinion above quoted, the defendant lodge imposed three assessments per month, of $3.85 each. This was the method adopted for the purpose of imposing a premium of $11.55 per month. The total amount of premium per month thus fixed was ascertained by the computation of the actuary as to the cost of insurance on the old-line plan, which includes the building up of a reserve. In our former opinion, we held that, under Sections 1822 and 1823 of the Code, power was conferred upon the defendant lodge to make sufficient assessments to cover the death losses of its members. There is no limitation in the statute nor in the certificates of the plaintiffs upon the power of the defendant lodge as to the *number* of assessments which it may make, if they are required for the payment of death losses. The mere fact, therefore, that the defendant lodge made *three* assessments in a month instead of *one* does not, of itself, condemn its action. The controlling consideration, which the defendant seems to have ignored, is: What was the current mortality of the order? Did the defendant assess these plaintiffs in greater amounts than were necessary to pay actual death losses? The only data in the record which tends to furnish an answer to this question is that, after the enactment of the amended by-law of 1911, the defendant began to build up a reserve, and that such reserve had steadily grown until, in the year 1919, it amounted to more than a million dollars.

These plaintiffs had contracted for mutual assessment insurance. Under that plan, each was liable to pay assessments for the death of all members predeceasing him. Neither he nor his estate would be liable for assessment on any death loss occurring after his decease. Neither was he required to pay any part of his own death loss, by leaving a reserve fund for that purpose. It is manifest from this record that the premiums proposed to be exacted from the respective plaintiffs were predicated upon the basis of building up a reserve, in addition to the payment of current death losses. The record does not contain the data which would enable a computation of the amount which could properly be assessed against these respective plaintiffs for the sole purpose of paying death losses. The liability for actual death losses must necessarily be apportioned by some ratio upon

*all* the members of the order; and, in so far as it might become a practical necessity to anticipate the mortality to some extent, the rate of such mortality should be based upon the average mortality of the *entire* membership.

It is urged upon us in argument that, in our former opinion, we mistakenly assumed that the mutual assessments provided for under the certificates were based upon *post*-mortem consideration of death losses, whereas, in truth, they were based upon *ante*-mortem estimates.  The claimed distinction is not, in our judgment, a material one for our present purposes. Theoretically at least, all assessments for death losses are made *post mortem*.  It is undoubtedly true that, as a practical business method, *ante-mortem* estimates are made of probable death losses, and these become the practical basis of the assessments. The fundamental principle involved is the same, either way. Successive *ante-mortem* estimates adjust themselves to each other, and each successive one tends automatically to correct the deficiency or excess of previous ones.  The fact remains that the ultimate legal liability of the certificate holder is predicated upon actual death losses already accrued.  It ought not to be difficult, much less should it be deemed impossible, to determine the actual mortality in the membership of this lodge, and to predicate thereon the measure of liability of the respective plaintiffs to assessment.  This is the kind of insurance they contracted for.  They are neither entitled to nor liable for anything more or better.  This was our adjudication in the former case.  In this respect, the defendant lodge has not conformed to such adjudication.  It follows of necessity that the new by-law of June, 1919, cannot be enforced as against these plaintiffs, and that relief by injunction was properly awarded.

As to the decree actually entered, we are in some doubt as to whether it may not be objectionable in form, in that it is capable of a construction not warranted by the record.  By the last clause of the injunction decreed, the defendants "are perpetually enjoined and restrained from passing, adopting, or enacting, or attempting to pass, adopt, or enact laws or rules increasing the plaintiffs' rates or assessments or the amounts payable by them, or harassing or attempting so to do, as long as one assess-

3. INSURANCE: benefit insurance: nonmutual reserve.

ment per month, together *with the amount of assets in the hands of the defendant association, are sufficient to meet the amounts due and payable to beneficiaries on account of deaths of members of the association occurring prior to the time of the making of said assessment.*"

The reference therein to the "assets in the hands of the defendant association," as being available for payment of death losses and as a protection to plaintiffs against further assessments until such assets are exhausted, is capable of a construction which would award to the plaintiffs greater relief than they are entitled to. While we find that the rate of premium proposed by the defendants against the plaintiffs would result in the building of a reserve fund, and that such rate, as applied to the other membership, has resulted in building up a large reserve fund, it does not follow that plaintiffs are entitled to the benefit of the reserve fund thus built up from the premiums paid in by the other members. That is to say, the plaintiffs have never submitted to the increased premium rate, and they have been protected in their refusal by the previous and present adjudications. They have continued to pay the old rate of $3.85 a month, and no more. It does not appear that any reserve has resulted from this premium rate since 1911. This rate was adopted and acquiesced in 20 years ago, under the original plan of liability to assessment for death losses only. This rate, therefore, is presumptively the appropriate rate for the payment of the death losses. There is no burden upon the defendant to justify this rate. The plaintiffs, therefore, are in no position to demand that they be protected against the payment of the *old premium rate,* presumptively necessary for the payment of current death losses, by the use of the present reserve to which they have not, in fact, contributed. What the plaintiffs are entitled to as against the other membership is not that they may take the benefit of the reserve thus built up by the others, but that the entire membership shall respond to its pro-rata share of current death losses, regardless of the additional sums which they may voluntarily pay in for the purpose of a reserve.

4. INSURANCE: assessments: presumption.

There is also a provision in the injunction decreed, enjoin-

ing the defendants from making *three* assessments a month and confining them to *one* assessment per month.

As we have already indicated, the controlling consideration is not the *number* of assessments that may properly be made against these plaintiffs. There is no legal limitation upon the mere number. Assessments sufficient in number and amount to pay current death losses may be made. If, for the purpose of such call, it should become necessary hereafter to increase the number or amount of the assessments, the defendants would have such power. But the burden of justifying the increase upon such ground would be upon them. Otherwise, the presumption that the old rate was sufficient would continue, and does continue to the present time, for the purpose of this adjudication. We should not, however, prejudge the future necessities of the defendant association in that regard.

With the modification here indicated, the decree entered below is—*Affirmed*.

STEVENS, C. J., WEAVER, PRESTON, ARTHUR, and FAVILLE, JJ., concur.