No. 22,435.

LILLIAN JANE WILLIAMS, *Appellee*, v. THE AMERICAN INSURANCE UNION, *Appellant*, and THE HOME BUILDERS UNION, *Defendant*.

SYLLABUS BY THE COURT.

1. FRATERNAL BENEFICIARY INSURANCE—*By-Laws and Certificate Must Conform to Statutes.* The by-laws of a fraternal beneficiary society and the beneficiary certificate issued by it must conform to section 5409 of the General Statutes of 1915, which prohibits such a society from issuing a certificate except for the smallest amount provided for in its by-laws until its membership shall be such that one assessment on each member will produce sufficient funds to pay its proposed next largest benefit certificate in full, and a by-law adopted by such society to make its laws conform to the statute does not violate the terms of the certificate prohibiting a change in its terms and conditions before the year 1925.

2. SAME — *Merger of Societies — Insurance of Members Must Be Continued.* Section 5419 of the General Statutes of 1915, which provides for the merger of fraternal beneficiary societies, compels such societies to provide for the continuance of the insurance of all the members of both organizations, but does not prohibit a change in the rate of assessment to be paid.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion on rehearing filed July 10, 1920. Modified. (Original opinion filed but not reported.)

*Nelson Case,* of Oswego, *H. M. Waring,* of Kansas City, Mo., and *John V. Sees,* of Columbus, Ohio, for the appellant; *Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, of counsel.

*Archie D. Neale,* of Chetopa, for the appellee.

*George R. Allen,* of Kansas City, for the American Fraternal Congress, as *amicus curiæ; Arthur W. Fulton,* of Chicago, Ill., of counsel.

The opinion of the court was delivered by

MARSHALL, J.: An opinion in this action was filed on January 10, 1920, but on the application of the American Insurance Union a rehearing was granted, and the opinion was not published.

The plaintiff recovered judgment against the American Insurance Union for $1,862.10 on a beneficiary certificate issued by the Home Builders Union, a fraternal mutual benefit society organized under the laws of this state. The American Insurance Union appeals.

In 1905 the Home Builders Union issued its certificate to N. R. Williams providing for the payment to the plaintiff, the beneficiary named therein, of certain graduated sums, beginning with $500 if the death of N. R. Williams occurred during the first year after the date of his certificate, and ending with $2,000 if his death occurred after the expiration of fifteen years. The certificate provided for the payment of $1,800 if his death occurred "after 13 years and before the expiration of 14 years."

The application signed by N. R. Williams contained the following:

"I hereby consent and agree that this application, to which I have attached my signature, the examining physician's report, and all of the provisions of the Constitution and Laws of the Order, now in force, or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by Supreme Lodge of The Home Builders Union, whether printed, or referred to therein, or not."

The certificate contained the following provisions:

"This certificate is issued upon the express condition that said Nicholas R. Williams shall in every particular comply with all the laws of the Order. The terms and conditions of this certificate shall not be changed before the year A. D. 1925, except upon written consent of the member holding same, duly acknowledged before a notary public."

The by-laws of the Home Builders Union provided for their amendment. An amendment made in 1906 provided:

"That in no event shall any beneficiary or beneficiaries under any certificate issued in either class of this order, be entitled to receive a larger sum than will be produced and received from one full assessment on all members belonging to the order at the time of the death of the party holding such certificate under the established rates and rules of the order. Provided, also, the foregoing provision is hereby declared to have been the meaning and intention of the by-laws as originally adopted, and this meaning and construction shall apply to all certificates heretofore written, as well as those hereafter to be written."

The by-laws also provided:

"Each beneficiary certificate shall name the rate paid by the member and shall contain an agreement that the rate named therein shall not be changed before the year A. D. 1925."

A further provision of the by-laws was that each certificate should contain the following:

"The terms and conditions of this certificate shall not be changed before the year A. D. 1925, except upon the written consent of the member holding the same."

In April, 1918, the Home Builders Union merged with the American Insurance Union. The contract of merger contained the following:

"Any member of The Home Builders hereby merged and consolidated who has attained the age of fifty-five (55) years at the time this contract goes into effect and who became a member of the said The Home Builders prior to January 1st, 1912, shall continue to pay the premiums and assessments required by the laws of The Home Builders and shall be entitled to receive the amount of insurance which said premiums or assessments so paid will purchase on the basis of the American Experience Table of Mortality with interest at 4 per cent., so loaded as to provide for the use of the same amount for the expense fund as it set aside for expense on the Level and Twenty-year-payment Tables of the American Insurance Union and on the basis of the Level Rate at the age attained at the time this contract goes into effect. Should said members last above referred to desire to continue their present certificates in force for the full amount thereof by paying their premiums on the basis of the American Experience Table of Mortality with interest at 4 per cent., so loaded as to provide for the use of twenty-five (25) cents per month for expenses, and on the basis of the level rate at the age attained at the time this contract goes into effect, they may do so upon proper notice in writing to the Association and the consent and approval of the National Surgeon of the American Insurance Union."

On May 10, 1918, the American Insurance Union issued a rider to be attached to the certificates held by members of the Home Builders Union. The rider stipulated that:

Williams v. Insurance Union.

"The holder of the certificate hereto attached hereby becomes a member of the American Insurance Union, subject to all the conditions and limitations and entitled to all the benefits of said membership in accordance with and subject to the terms of the contract of merger and consolidation reprinted on the back hereof and subject to the Constitution and Laws of the American Insurance Union now in force or that may hereafter be in force."

The rider sent to Williams was not attached to the certificate. He was insane from December, 1917, continuously until the time of his death, which occurred in September, 1918. He was fifty years old at the time he became a member of the Home Builders, and was sixty-three years old when he died. After the merger his assessments were paid to the American Insurance Union. It offered to confess judgment for $266.67, the amount of insurance the assessments paid by N. R. Williams would purchase under the terms of the merger contract. That offer was refused by the plaintiff. At the time of his death there were 1,105 members in the Home Builders Union, and one full assessment thereon would have produced $912.75; in October, 1918, there were 1,092 members, and one full assessment thereon would have produced $852.49. The American Insurance Union argues that judgment should not have been rendered for more than $266.67.

1. The application, the certificate, and the by-laws, as they existed at the time the certificate was issued, must be construed together as the contract between the Home Builders Union and N. R. Williams; however, all must be subordinate to law. In the application Williams consented to all the laws of the organization that might thereafter be adopted. The by-laws provided for their own amendment, but they stipulated that no change should be made in the terms and conditions of the certificate before 1925 without the written consent of the member. The by-laws further stipulated that each certificate should contain an agreement "that the rate named therein should not be changed before 1925." The certificate must be construed to have been issued under the terms imposed by law. Section 5409 of the General Statutes of 1915, governing certificates issued by fraternal beneficiary societies, in part reads:

"No such association shall issue benefit certificates except for the smallest amount provided for by its laws, until its membership shall be

such that one assessment upon each will produce sufficient funds to pay its proposed next largest benefit certificate in full; a similar restriction shall apply until the number of its membership shall authorize the issuance of its maximum certificate."

The amendment to the by-laws of the Home Builders Union adopted in 1906 made the by-laws conform to statutory requirement. The by-laws of the Union prior to the amendment did not conform to the laws of the state, and to that extent were invalid, because the state law controlled and prohibited the Union from issuing the character of certificate that was held by N. R. Williams. For the reason that the amendment of 1906 made the by-laws conform to the statutory requirement, that amendment cannot be said to have been in violation of the terms of the contract between the Home Builders Union and N. R. Williams.

2. The statutes providing for the merger of fraternal beneficiary societies must be examined and interpreted. Those statutes, sections 5418 and 5419 of the General Statutes of 1915, in part read:

"That any fraternal beneficiary society, order or association of the state of Kansas is hereby authorized to consolidate or merge with or transfer its members to or reinsure its members with any other similar organization authorized to do business in this state." (§ 5418.)

"To affect [effect] such consolidation, merger, transfer or reinsurance, it shall be necessary for the organizations contemplated in section 1 of this act, to file with the superintendent of insurance a copy of their contract, signed by the president and secretary, or corresponding officers, of the contracting organization, together with a sworn statement of the financial condition of each. Such contract shall provide for the continuance of the insurance of all the members of both organizations: *Provided,* The consolidated organization or the organization taking over the members shall have the same defense to any certificate that the organization had which issued the same."

"Upon the submission of said contract, . . . the superintendent of insurance, if satisfied that the consolidation, merger, transfer or reinsuring is just and equitable to the members of each of said organization[s], shall approve said contract and notify the respective parties to said contract of his approval, and said contract shall not become effective until approved by the superintendent of insurance." (§ 5419.)

Mergers of fraternal beneficiary societies must be made in compliance with section 5419. Prior to the enactment of that law, fraternal beneficiary societies in this state could not merge with each other. (Bankers' Union v. Crawford, 67 Kan. 449,

73 Pac. 79; *Jackson v. Insurance Co.,* 101 Kan. 383, 385, 167 Pac. 1046.) The object of permitting mergers of such societies, so far as it can be ascertained, should be stated. It is well known that many fraternal beneficiary societies have been conducted on a financial basis that has inevitably resulted in insolvency. This has deprived members of such associations, in many instances, of insurance at a time when they could not get other insurance. Many of such associations, after operating with apparent success for a few years, have been compelled to cease to pay their beneficiary certificates because money with which to pay them could not be realized from the assessments authorized under the by-laws of the societies. To assist in avoiding these consequences mergers of beneficiary societies were resorted to. The evident purpose of the statute was to authorize such mergers and to save the insurance to the members of the organizations that desired to merge. To effect the latter object the statute provides that "such contract shall provide for the continuance of the insurance of all the members of both organizations." What insurance? Necessarily the insurance that was in existence—not other insurance, but the same insurance. The statute says "the insurance." Particular insurance is thus specified. "The insurance" means that insurance carried by the members at the time the merger contract is put into effect. If the statute read, "the contract shall provide for the insurance of all the members of both organizations," there would be ample room for arguing that any insurance that would be just and equitable would comply with the statute. But the statute does not read as indicated. It positively points out the insurance that shall be continued.

But the statute does not say what rate of assessment shall be paid for the insurance that shall be continued. If the purposes of the statute are to be accomplished, it must be conceded that in the merger of fraternal beneficiary societies with inadequate rates the merger contract may provide for a change in the rate of assessment. If the statute will not bear this interpretation, mergers of beneficiary societies that are approaching insolvency cannot successfully be carried into effect. The statute directs that the insurance shall be continued; therefore, the rate of assessment may be increased if necessary.

What about the member who is unwilling or unable to increase his payment for insurance? Shall he be denied any insurance whatever after having paid his assessments for a number of years, and after having continued to pay his assessments subsequent to the merger and those assessments have been accepted by the merged association? That would be unjust and inequitable. The contract in the present case, however, provides that the beneficiary shall have that amount of insurance which the assessments paid by him will purchase on the terms named in the contract, which terms are on the same basis as those that must be complied with by the member who desires to continue the full amount of his insurance.

This conclusion compels a modification of the judgment. It is therefore modified by reducing it to $266.67, the amount tendered by the defendant to the plaintiff.

DAWSON, J. (concurring) :  A condition and not a theory concerning many of these fraternal insurance societies has arisen with increasing frequency in recent years. Although designed in the most commendable spirit, they have too often been *mathematically* unsound; their obligations could not be met from their sources of income. They did not charge enough for the service—the insurance—which they furnished. This inherent weakness only grew acute after their seemingly successful careers had run for a considerable number of years. As time developed the certainty of their ultimate insolvency, the several state legislatures, the courts, and the supervising departments of insurance have faithfully sought to make the best of a bad situation. Thus, mergers and increased rates have been countenanced. I do not think these mergers and increased rates violate the true spirit of the constitutional inhibition against the impairment of contracts. To insist on the cold letter of that inhibition brings to the front the fact of the fraternal society's inherent insolvency, and the same cold letter of the law would require a summary termination of the society's existence by cancellation of its charter, a receivership, a winding up of its affairs, and a distribution of its fragmentary assets among all its members holding certificates of insurance. In such a situation no one member is equitably entitled to a preference—to an exaction of the uttermost farthing; he is equitably entitled to a *pro rata* division with his

fellow members, and no more. So long as a merger, constrained into existence by such necessity, equitably and economically preserves what assets the failing institution has, no member has any just cause of complaint. To hold otherwise, is to declare that a merger of a weak or insolvent insurance society, to prolong its life and possible usefulness, may not be undertaken at all unless such merger provides for the literal discharge of all the merged society's obligations dollar for dollar—and for the impossible fulfillment of the *hopes* of its founders as well. I should only yield to that conclusion if I could find no logical escape from it.