## ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA v. SMITH.

(Circuit Court of Appeals, Seventh Circuit. July 27, 1911.)

### No. 1,733.

1. INSURANCE (§ 719\*) — ACCIDENT POLICY — CONSTRUCTION — "OBSERVE" — "ABIDE BY."

Where, by defendant's constitution, benefits were restricted to members in good standing who had paid all dues, and who faithfully observed the laws, rules, commands, and regulations then in force, or which might thereafter be added to the constitution, by-laws, and rules, and in taking his obligation of membership, without which admittance was impossible, decedent agreed in writing to abide by the constitution as it then was, or might thereafter be amended. the words "to observe" and "to abide by" meant to obey and to accept the consequences of, and, so far as amendments were concerned, were not restricted to amendments of those laws and rules as related entirely to disciplinary and social regulations, but extended as well to amendments affecting decedent's right to benefits.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. § 719.\*

For other definitions, see Words and Phrases, vol. 1, pp. 17–18; vol. 6, p. 4889; vol. 8, p. 7735.]

2. INSURANCE (§ 787\*)—MUTUAL BENEFIT SOCIETIES—CONSTITUTIONAL PROVISIONS—AMENDMENTS.

Decedent joined a mutual benefit society having accident insurance benefits, agreeing to observe and abide by the constitution as it then was or might thereafter be amended. At the time he joined, the constitution provided that payment of indemnity for injuries through external, violent, or accidental means should not extend to any bodily injury of which there should be no external or visible signs, which provision was thereafter amended by defining "external, violent and accidental means" to exclude any death, disability, or loss resulting from infection, except where the same resulted from an open wound, and any death, disability, or loss of which there was no external and visible mark on the body; the dead body not being such a mark, except in case of drowning or asphyxiation. *Held*, that decedent was bound by the amendment, and hence there could be no recovery of benefits for his death from enterocolitis, alleged to have resulted from ptomaine poisoning, of which there was no external or visible mark on the body.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 787.\*]

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

Action by Addie Smith against the Order of United Commercial Travelers of America. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Jones & Schubring, Lowry F. Sater, and Vorys, Sater, Seymour & Pease, for plaintiff in error.

John M. Olin and Harry L. Butler, for defendant in error.

Before GROSSCUP, BAKER and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. Defendant in error was named as beneficiary in an application made in 1896 by her husband, L. A. Smith, for membership in the fraternal and benevolent order, plaintiff in er-

ror. In 1908 Smith died of entero-colitis, inflammation of the small intestine and the colon. At the trial the beneficiary introduced evidence, which her counsel insist was sufficient to support a conclusion of fact, and which counsel for the order earnestly contend was only a suggestion for a conjecture, that Smith about 36 hours before he was taken ill ate oysters that were infected with the spores of bacteria; that the spores became bacteria in Smith's alimentary tract; that the bacteria working on nitrogenous food generated ptomaine poison; that the ptomaine poison by irritating and inflaming the intestines produced the disease; that the disease caused the death; and that the death, therefore, was "effected through external, violent, and accidental means" within the meaning of the laws of the order applicable to this case. Some six months before Smith's death the order amended its laws so as to define more clearly what cases of alleged "accidents" were within, and what without, the benefits of the common fund. If these amendments are found to be determinative of this case, it is needless to inquire into the sufficiency of the evidence to establish the aforesaid series of causes or the liability of the order under its former laws.

Organized as a fraternal union to provide social enjoyments and also pecuniary benefits in cases of injury or death from "accidental means," the order required an applicant to undergo an initiation, and thereupon issued to him a certificate of membership entitling him "to all rights and privileges of membership accruing to him under the constitution," and recommending him "to the fraternal courtesy of the brotherhood wheresoever dispersed."

Government of the order was representative, and the legislative power was vested in the "Supreme Council." Sections of the constitution (the law of the order) provided how amendments should be presented and voted upon. No contention is made that the amendments were not duly and regularly adopted.

When Smith joined the order, the constitution provided that payment of indemnity for injuries through "external, violent, and accidental means" should not extend "to any bodily injury of which there shall be no external and visible sign," and to other named cases not material here. By the amendments the definition of "external, violent, and accidental means" was further particularized so as to exclude "any death, disability or loss, resulting from infection, excepting where the same results from an open wound," and "any death, disability or loss, of which there shall be no external and visible mark on the body (the dead body not being such a mark except in case of drowning or asphyxiation)."

By competent testimony and proffered instructions, plaintiff in error duly presented to the court for submission to the jury the issue of no liability because Smith's death resulted from an infection that did not come from an open wound. For the "external and visible sign" of injury through "external, violent, and accidental means" the evidence showed only chills, fever, pallor, weakness, facial expressions of pain, bloody stools, and tenderness and swelling of the abdomen. These may have been external and visible signs of entero-colitis, which

all the experts agreed has many causes beside infection from 'tainted food; but proof of entero-colitis and its accompanying "signs" (or symptoms) was no proof of an "external and visible mark on the body" as required by the amendments. Being of the opinion that the amendments were not binding on Smith, the judge let the case go to the jury.

[1] In his application Smith certified that he had read the constitution. As already stated, the constitution provided how amendments might be adopted. Benefits were restricted to members in good standing, which was defined as consisting of paying all dues and "faithfully observing the laws, rules, commands, and regulations that are now in force or that may be added to this constitution, by-laws, and rules." In taking the obligation of membership (without which admittance was impossible) Smith agreed in writing "to abide by the constitution as it now is or may be hereafter amended."

Defendant in error insists that the promise "to observe" and "to abide by" amendments related only to disciplinary and social regulations and not to the indemnity contract. As to disciplinary and social regulations à reservation of power to amend was not needed. If a consent to amendment is exacted, it should be attributed to the matter in respect to which consent is necessary.

"To observe" and "to abide by" mean "to obey" and "to accept the consequences of.".

It is to be noted that these verbs define the agreement of members not only to "amendments," but also to the "constitution as it now is." So, if these verbs are given a meaning under which Smith never agreed to be bound by the amendments, by the same token he never agreed to be bound by anything, and therefore a mutually binding contract was never entered into by and between him and the order. If they are broad enough to express Smith's engagement that indemnity to him or his named beneficiary should be measured by the constitution as it read when he joined, that same meaning necessarily expresses his engagement that indemnity to him or his named beneficiary should be measured by amendments legally adopted.

[2] Indemnity was not absolute. A member might never suffer injury or death through accidental means. There was no reserve fund, no surrender value in which members had an interest. By uniform dues and assessments upon all members, regardless of age or date of admittance, uniform benefits were to be paid to victims of accidents or to their families. Manifestly the underlying principle of the order was that the payment of uniform dues should entitle all members to uniform benefits under uniform circumstances and conditions. To construe the laws of the order so that members who joined after 1907 should pay indemnity in cases of death from infection or in cases where no external and visible mark on the body evidenced an injury from external, violent, and accidental means, while they themselves could receive no indemnity under like circumstances, would create classes where none was intended, and work an unfair discrimination where equality of obligation and of benefit was the aim.

A contention is also made that another clause in the definition of

accidental means made the order liable for injuries from the accidental taking of poison; and that, since the swallowing of the spores of the bacteria that generated the ptomaine poison was an unintended act, this case is maintainable. But, whatever meaning this clause might be given if it stood alone, it cannot, when read with the amendments, be rightly held to cover poison from infection (excepting where the infection results from an open wound) or poison where no external and visible mark on the body is evidence of poison as the means— not merely evidence of a disease that may be induced by other means as well as by poison.

We have read the numerous citations. Applications of the rule are various, but no case within our notice denies that the indemnity relation in fraternal orders may be amended if the members have so agreed, and if the amendments are in consonance with the charter, are not violative of the law of the land, and are reasonable. No claim is advanced that the provisions of the amendments in question run counter to the charter or the law of the land. As to their reasonableness, if courts were coming to hold that the unconscious swallowing or inhalation of bacteria and bacilli was the suffering of an injury through external, violent, and accidental means, not only were the additions to the definition reasonable, but they were necessary if the order was to be kept within its charter purpose of furnishing "accident" indemnity, and was not to be forced into writing "life" insurance.

Judgment reversed, and cause remanded for further proceedings consentaneous to this opinion.