## SUPREME LODGE OF FRATERNAL UNION OF AMERICA v. LIGHT.

(Circuit Court of Appeals, Eighth Circuit.   March 14, 1912.)

### No. 3,598.

1. INSURANCE (§ 719*)—MUTUAL BENEFIT INSURANCE—CONTRACT—ASSENT OF POLICY HOLDERS TO FUTURE CHANGES IN LAWS.

   A member of a fraternal beneficial organization who accepts membership subject to such by-laws and rules as the Supreme Lodge may thereafter adopt is bound by any reasonable legislation thereafter adopted.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. § 719.*]

2. INSURANCE (§ 719*)—MUTUAL BENEFIT INSURANCE CONTRACT—EFFECT OF AMENDMENTS OF CONSTITUTION.

   Where the constitution of a fraternal beneficial order prohibited its members from engaging in the occupation of saloonkeepers, bartenders, or manufacturers of intoxicating liquors, a subsequent amendment pro-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

viding that any member who should "enter upon the manufacture or sale of malt, spirituous or vinous liquors to be used as a beverage in the capacity of proprietor, stockholder, agent or employé" should forfeit all rights as a member, either social or beneficial, was germane and reasonable, and binding upon an existing member, whose contract was expressly subject to such by-laws or rules as might thereafter be adopted by the Supreme Lodge.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. § 719.*

Mutual benefit insurance contracts as affected by subsequent provisions and amendments of charter, constitution or by-laws, see note to Supreme Council A. L. H. v. Champe, 63 C. C. A. 285.]

In Error to the Circuit Court of the United States for the District of Utah.

Action at law by Lillian Light against the Supreme Lodge of the Fraternal Union of America. Judgment for plaintiff, and defendant brings error. Reversed.

Charles L. Allen, B. M. Webster, and Allen T. Sanford, for plaintiff in error.

Edward B. Critchlow and William J. Barrette, for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

ADAMS, Circuit Judge. This was a suit by a beneficiary named in a benefit certificate, issued in 1898 by the Supreme Lodge of the Fraternal Union of America to John Pawlas, a member of one of its constituent subordinate lodges. He died in 1908 after having paid all assessments made against him during his lifetime. The defense was that in 1906 Pawlas engaged in the business of selling malt liquors to be used as a beverage, and continued to do so during the balance of his life, in violation of a prohibition in that particular contained in an amendment to the constitution of the Supreme Lodge which was adopted in 1902. The defendant offered to return to plaintiff an amount of money equal to all assessments paid by Pawlas during his lifetime.

The question is whether Pawlas, whose membership and benefit certificate antedated the amendment of 1902, was subject to its provisions. His original certificate issued in 1898 reads as follows: "This certificate issued by the Supreme President and Supreme Secretary of the Fraternal Union of America, by its authority, witnesseth: That Frater John Pawlas, a member of Sego Lodge No. 138, located at Ogden, Utah, is, while in good standing in this fraternity, entitled to participate in its benefit fund to the amount of twenty-four hundred dollars, which shall be paid at his death to Lillian Pawlas (wife) by its Supreme Lodge, subject to all the conditions named in this certificate and the provisions contained in its constitution, and liable to forfeiture if said Frater shall not comply with said provisions and conditions, laws and such by-laws and rules as are or may be adopted by the Supreme Lodge or the Local Lodge of which he is a member."

The amendment adopted in 1902, so far as applicable to this case, reads: "Should any member who now is or who shall hereafter become a member of this order, hereafter enter upon the manufacture or sale of malt, spirituous or vinous liquors, to be used as a beverage, in the capacity of proprietor, stockholder, agent or employé, * * * he shall ipso facto forfeit all rights as a member of this Order either social or beneficial, and his certificate shall thereby become absolutely null and void. * * * " Whatever other questions may arise, it is clear, we think, that Pawlas by the acceptance of his certificate actually agreed to be bound by any by-laws or rules which the Supreme Lodge might thereafter adopt.

It is argued that his agreement in this respect related only to his social status as a frater or member of the lodge, and did not empower the Supreme Lodge to legislate so as in any manner to affect his business relation with the lodge; that is, his insurance contract. But we are unable to discover any such limitation to the scope of his agreement. By clear and unequivocal language contained in the certificate which he received he agreed that, not only his right to membership, but his right to participate in the benefit fund of the lodge, should be subject to any by-laws or rules which the Supreme Lodge might thereafter adopt. We think this is so clear as to require no attempt at demonstration.

The question most debated is whether his agreement to be subject to future legislation empowered the Supreme Lodge by such legislation to prohibit him from engaging in the sale of malted liquors to be used as a beverage. In other words, did such legislation impair a vested right? Counsel for plaintiff invoke the decision of this court in the case of Knights Templars' & Masons' Life Indemnity Co. v Jarman, 44 C. C. A. 93, 104 Fed. 638, as authority for their contention. We there held that the legislative acts of private corporations are presumptively intended to operate prospectively only, and that, when such an act would change the contracts made by its outstanding certificates by reducing the amounts payable thereon, it would impair the obligation of the existing contracts, and the presumption that the amendment was intended to act prospectively only would be indulged. This doctrine may well be conceded, but it has no applicability to the present case. There is in this case no attempt to reduce the amount of indemnity which the company had promised to pay in the event of the death of the member, and thereby lessen the value of his policy.

They also call attention to the case of Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S. W. 151, where it was held that, if an amended law impairs the substantial property rights of the member in his insurance contract, it would be inoperative. This general proposition need not be disputed; but that case went off on a construction of two provisions of the policy which the court held, when taken together, permitted a forfeiture only when the death resulted from engagement in the prohibited occupation, and is no authority for plaintiff's present contention. Many other cases are also cited by them announcing the propositions stated in Knights Templars' & Masons' Co. v. Jarman, supra, that subsequent legislation, reducing the amount promised to

be paid or otherwise materially affecting the enforcement of the substantial right secured to a member by his original contract, is an invasion of vested rights and inoperative. They also call attention to the cases of Tebo v. Supreme Council of Royal Arcanum, 89 Minn. 3, 93 N. W. 513, Barnett v. Grand Lodge A. O. U. W., 63 Misc. Rep. 429, 117 N. Y. Supp. 125, and Ayers v. Order of United Workmen, 188 N. Y. 280, 80 N. E. 1020, and other cases cited in them which seem to sustain their contention in this case. But they are not in harmony with prevailing authority as we shall presently demonstrate and do not commend themselves to our favorable consideration.

[1] We think the true rule is this: That a member of a fraternal beneficial organization who accepts membership, subject to such by-laws and rules as the Supreme Lodge may thereafter adopt, is bound by any reasonable legislation thereafter adopted. The following authorities sustain this proposition: Hall v. Western Travelers', etc., 69 Neb. 601, 96 N. W. 170; Head Camp, etc., v. Woods, 34 Colo. 1, 81 Pac. 261; Court of Honor v. Hutchens, 43 Ind. App. 321, 82 N. E. 89; Union Benev. Society v. Martin, 113 Ky. 25, 67 S. W. 38; Daughtry v. Knights of Pythias, 48 La. Ann. 1203, 20 South. 712, 55 Am. St. Rep. 310; Pain v. Société St. Jean Baptiste, 172 Mass. 319, 52 N. E. 502, 70 Am. St. Rep. 287; Dornes v. Supreme Lodge, etc., 75 Miss. 466, 23 South. 191; Supreme Council, American Legion of Honor, v. Adams, 68 N. H. 236, 44 Atl. 380; Tisch v. Protected Home Circle, 72 Ohio St. 233, 74 N. E. 188; Chambers v. Supreme Tent, etc., 200 Pa. 244, 49 Atl. 784, 86 Am. St. Rep. 716; Eversberg v. Supreme Tent of Maccabees, 33 Tex. Civ. App. 549, 77 S. W. 246; Fugure v. Mutual Society of St. Joseph, 46 Vt. 362; Loeffler v. Modern Woodmen of America, 100 Wis. 79, 75 N. W. 1012; Supreme Lodge K. of P. v. La Malta, 95 Tenn. 157, 31 S. W. 493, 30 L. R. A. 838; Louisa Moerschbaecher v. Royal League, 188 Ill. 9, 59 N. E. 17, 52 L. R. A. 281; Supreme Commandery, etc., v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332; O'Neill v. Supreme Council, 70 N. J. Law, 410, 420, 57 Atl. 463, 1 Ann. Cas. 422.

[2] The question, therefore, is: Whether the amendment of 1902 was a reasonable exercise of the power reserved in the contract as originally made with Pawlas. The original constitution in force when Pawlas became a member contained provisions prohibiting members from engaging in the occupation of saloon keepers or bartenders or manufacturers of intoxicating liquors. The amendment of 1902 was therefore germane to provisions of the constitution in force when Pawlas became a member, and which it is conceded were obligatory upon him. The original constitution disclosed a general policy and purpose to prohibit the members of the lodge from engaging in the occupation of manufacturing or selling intoxicating liquors. It limited the prohibition, however, to saloon keepers, bartenders, and manufacturers. To engage in manufacturing or selling intoxicants was from the beginning regarded as an exposure to temptation and danger prejudicial to health and longevity which the lodge would not insure against. The amendment recognized the wisdom of this general policy, and carried the prohibition a little further. The manufacture

and sale of malt, spirituous, or vinous liquors as a beverage was an exposure of the person engaged in them to a less degree of danger perhaps than keeping a saloon or tending a bar, but it is obviously an exposure to the same general character of risk. There was nothing radically new in the amendment of 1902. It was not inconsistent with existing provisions of the members' contracts, but in substantial accord with them. Such an amendment, therefore, was within the reasonable contemplation of a member who agreed to be subject to all amendments.

Not only is this true, but we think the amendment was the exercise of a power calculated to promote the general welfare of all the members and particularly calculated to qualify and enable the Supreme Lodge to fully and scrupulously perform the contract as actually made with its members.

Occupations unknown 20 years ago are frequently offering themselves to members of fraternal organizations, and many of them, like aviation for instance, are extremely dangerous, and so extrahazardous as to practically prohibit any one engaged in them from securing life insurance on any safe and recognized plan. Entering upon them by members at will would necessarily imperil, not only their own, but all other members', prospects of ultimately receiving their promised benefits. It is said the chief object of these fraternal organizations is to provide reliable insurance for its members at a low cost. Could anything more effectually defeat this object than the unrestrained employment in extrahazardous, uninsurable occupations? The wisdom, therefore, of reservation of control over occupations of its members within reasonable bounds, is apparent. It destroys no right and impairs no obligation. Its natural and inevitable effect is to promote the welfare of all the members and enhance the ability of the organization to pay its promised indemnity.

The Supreme Lodge, vested with the power to determine whether a given occupation should be prohibited, has deemed engagement in selling malt liquors to be used as a beverage as one of that kind. The unusual temptation and perils attending that occupation, as commonly recognized, preclude any claim that its prohibition is not an exercise of a just and reasonable discretion.

The judgment must be reversed, and the cause remanded, with directions to grant a new trial; and it is so ordered.