ZERBEL, Respondent, vs. SUPREME ASSEMBLY OF THE EQUITABLE FRATERNAL UNION, Appellant.

*June 3—June 24, 1929.*

300

301

302

303

304

*Benjamin Poss* of Milwaukee and *Herman L. Ekern* of Madison, for the appellant.

For the respondent there was a brief by *Keller, Keller & O'Leary* of Appleton, and oral argument by *L. Hugo Keller.*

FRITZ, J. In *United Order of Foresters v. Miller,* 178 Wis. 299, 190 N. W. 197, this court considered the relative rights and obligations of a mutual benefit association (organized under the laws of Wisconsin), and of its members, under its benefit and insurance certificates and its by-laws. Conclusions were arrived at after extended research, some of which are applicable and decisive in the case at bar, and may be stated as follows:

1. A fraternal benefit association can, when realizing that the payments required from its members have been inadequate to provide for the old-age benefits which it had by by-law agreed to pay to members who had attained the age of seventy years, rescind and cancel the provisions relating to old-age benefits as to those members who have not become seventy years of age, by a by-law duly passed, and such a change is a necessary and a proper exercise of the reserved power to amend its by-laws.

2. To recognize solely the purely legal rights of a member of a fraternal, mutual benefit association, without considering the very substantial impairment, if not total destruction,

of such mutual organization, because the payments theretofore required from its members were never adequate to secure the future performance, under any recognized method of insurance accounting, of the proposed obligations of the association, or to pay even for life insurance in its simplest form, would be practically barren of result to the individual members who might insist upon such rights, because to enforce them on a large scale would lead to the certain and inevitable destruction of the association. In such a situation the equities of the great majority of the members must be deemed superior to and controlling over the mere legal, and, to all practical purposes, insubstantial rights of the minority, all being innocent parties to a mistaken policy.

3. There can only be real mutuality where contributions are made *pro rata* for benefits conferred. A member's equity in the funds of a mutual benefit association cannot exceed the sum which measures his equitable *pro rata* share of the contributions from which such funds grow.

4. The nature of the association, its representative form of government, and the fact that the change of the provision for payment to a member of old-age disability benefits did not affect any right for which such members had theretofore paid any adequate consideration, prevent the application of any principle of estoppel. If such promise of the association is part of a policy which is certain, if long continued, to wreck the association, then the members holding such policies have nothing approaching a vested right in such a disastrous system of insurance.

5. The association may abrogate its promise to release members attaining the age of seventy years from further dues or assessments, when it realizes that the payments theretofore required from its members were inadequate to provide for such old-age benefits.

6. There can be no question but that the association has the power by express provision of law, both of the state

legislature and its own charter, to levy special assessments to meet deficiencies arising from an insufficient accumulation of funds.

When the defendant in the case at bar, as a mutual benefit association, organized for the mutual benefit of its members, issued to plaintiff, as one of its members, its benefit certificate on November 22, 1912, the benefits and conditions on the back thereof, and the laws of the association then in force and thereafter enacted, were, by virtue of the express reference thereto in that certificate, made a part of the contract between the parties.

Thus, as a part of their contract, was the provision on the back that when he reached the age of seventy years or had paid $150 in assessments upon each $500 of insurance, he was to be released from all further assessments, "unless at that time or thereafter the experience of the society proves that the reserve fund and the assessments on the members as provided for by the laws are insufficient to enable the society to meet its promised insurance obligations in full."

Likewise, by reason of the express reference in the certificate making the laws "now in force and the laws that may hereafter be enacted" by the association a part of the contract, the provisions thereof on the subject of the release of members from further assessments upon having paid $150 in assessments upon each $500 of insurance, or upon reaching the age of seventy years, were subject to modification by the amendments to the by-laws in 1913 and 1914, which provided for such release "unless at that time or thereafter the experience of this society proves that the benefit fund belonging to such members and applicable to such benefit contracts and assessments on such benefit members as provided by these by-laws, are insufficient to enable the society to meet its promised insurance obligations on such benefit contracts in full."

When, with the payment of the October 1922 assessment,

plaintiff had paid $150 on each $500 of insurance, and when on December 24, 1922, he reached the age of seventy years, the respective rights and obligations of the parties were still as provided in the benefit certificate of November 22, 1912, including the benefits and conditions on the back thereof, and the laws of the association, including the amendments which had been enacted in 1913 and 1914.

At no time since the inception of the contractual relations between the parties was the provision for the proposed release of plaintiff from further assessments, upon reaching seventy years of age, or upon paying the $150 on each $500 of insurance, absolute or unconditional. That provision was always subject to suspension or abrogation if the reserve fund and the assessments on members proved insufficient to enable the society to meet its insurance obligations in full.

The letters written to plaintiff by defendant's secretary on October 30, 1922, and November 27, 1922, did not suggest or effect any modification of the existing rights or obligations of either party. They merely informed plaintiff, without misrepresentation, as to his status, at that time, as a member and certificate holder under his certificate and the society's laws then in effect. The letter of November 27, 1922, informed plaintiff as to his two options, viz.: either to accept a final cash settlement of not exceeding twice the amount of all benefit assessments paid by him on the contract, or to receive the old-age benefit, consisting of the amount due on his contract, which would be paid to him in twenty semi-annual instalments of $150. If he had then elected to accept that final cash settlement and surrender his contract, then, on payment of that cash settlement, the contract would have been wholly executed, and all of his obligations, as well as his rights thereunder, would have been terminated and discharged. However, he did not then choose to accept that settlement and thus terminate his con-

tractual relations with the defendant. He elected to take the old-age benefit of $150 semi-annually. As a consequence of his election, the contract continued partly unexecuted, and his rights and obligations, as well as the rights and obligations of the association, continued, subject to all conditions and reservations expressly provided, and also expressly referred to, in his benefit certificate, and hence were amenable to necessary and reasonable amendments of the by-laws, enacted in furtherance of the mutual interests and benefits of all of the membership of the association as an entirety.

After the association had paid the sixth semi-annual benefit of $150 it realized that its experience had proven that the original plan of insurance, under which plaintiff's and like certificates had been issued, provided rates of payment which were wholly inadequate to mature such contracts and to pay the benefits therein promised, and especially to pay the shares of death claims properly chargeable to each of such certificate holders, and to provide the funds necessary to pay the instalments and the payments to be made after holders thereof reached the age of seventy years.

Therefore, on April 21, 1925, it became necessary for the association to change its plans of operation and amend its laws so as to entirely repeal the provision of sec. 83 which provided for the release of members who had reached the age of seventy years from the payment of further assessments, and to amend sec. 86 of its laws so as to provide that:

"Any additional contributions required upon any benefit contract shall apply, notwithstanding any provision that the same shall become paid up, and, if not paid, shall be charged against the reserve on such contract and such contract shall thereafter be valued on the accumulation basis."

Those amendments were absolutely necessary to avoid the destruction of the entire organization, with inevitably disastrous consequences to all of its members. They afforded

reasonable means for preserving and fostering the superior and controlling equities of the great majority of the members of the association, and were within the reserved power of the association by virtue of the express provisions of plaintiff's benefit certificate and the incorporation therein, by express reference, of the then existing and thereafter enacted by-laws of the association.

In view of the conclusions reached by this court, as hereinbefore stated, in *United Order of Foresters v. Miller, supra,* the defendant's reasonable and necessary assessments against the plaintiff, and other members similarly situated, of $7 per month per each $1,000 of insurance, after July, 1925, are valid and enforceable against the plaintiff. Consequently, the judgment herein must be reversed and the complaint dismissed.

*By the Court.*—Judgment reversed, and the cause is remanded with directions to dismiss plaintiff's complaint, with costs.