### SHELTON v AMERICAN INSURANCE UNION

Ohio Appeals, 2nd Dist, Franklin Co

No 2024. Decided Oct 1, 1931

M. Y. Host and Pugh & Pugh, Columbus, for plaintiff in error.

J. D. Karns, B. W. Gearhart, L. E. Bilger, Columbus, for defendant in error.

KUNKLE, J.

Counsel have favored the court with very exhaustive briefs in which an unusually large number of cases are cited.

We have examined a number of these cases but will not attempt to discuss the cases cited by counsel in detail. We will merely announce the conclusion at which we have arrived after a consideration of the cases relied upon by counsel.

The testimony in this case is quite brief, as many of the pertinent facts are set forth in and admitted by the pleadings.

In brief, it appears from the record that on August 8, 1925, the defendant in error received an application from the plaintiff in error for a Health and Accident Policy; that this application was received by defendant in error at a time when its employees were largely away on vacation; that the application was not acted upon until August 27th, when the same was approved as appears from the exhibit, by the medical director; that the policy of insurance was not actually written until September 2nd, when it was mailed to the representative of defendant in error in West Virginia, and by such representative delivered to the plaintiff in error on September 3rd; that on August 29th some four days before the policy was actually written the plaintiff in error received severe injuries and upon his receipt of the policy, from the representative in West Virginia of defendant in error, made a claim upon defendant in error for payment under such policy. While the policy was not actually written until September 2nd, nevertheless it bears date of August 27th. August 27th was the date upon which the policy was approved by the medical director.

The testimony upon this phase of the case is found on pages 11, 12, 14, etc. of the record. This testimony is not denied.

"(Page 11): Q. (Referring to the Exhibit Number 4) That policy was approved on the 27th of August, 1925. Do you know of your own knowledge whether it was actually written on that date? A. It was not.

"Q. Can you tell when it was written? A. It was written on the 2nd of September.

"Q. What is the basis for that answer? A. Well they are never written until the day after we receive them at our desk, the approval—the applications are given to us late in the afternoon the day when they are approved and we can not take care of them until the next morning.

"Q. Have you any memoranda to show when that was actually written? A. Yes, this memoranda.

"Q. What day? A. September 2nd, 1925."

The witness testified further that it was mailed to West Virginia on September 2nd and that the reason for the delay in writing up this policy was due to the employees being away on vacation. On page 14 on cross examination the witness further testified as follows:

"Q. When you issue these policies, Miss Gossenz, who is this party signed on there? A. Emma Bauer.

"Q. Is that the last signature that goes on the policy? A. Yes.

"Q. From your record can you tell us when that signature was placed on there? A. On the second of September, the mailing date.

"Q. Have you any record to show that that signature was placed there on the mailing date? A. No, only the policies are always signed and mailed the same day.

"Q. Who fills in this date on the execution clause of the policy? A. The policy writer.

"Q. And you say that the date which you date your policies, it is the custom of the company that you date them as of the date of the approval; is that true? A. Yes sir.

"Q. Then you write them out later? A. Yes."

It thus clearly appears from the record that the policy in quetsion was not in existence, that is, had not been written and signed by the officers of the company until September 2nd; that the date contained in the policy, namely, August 27th, was merely the date upon which the medical director of the company had approved the application.

Counsel for plaintiff in error insist that the date August 27th cannot be modified by parol evidence; that the testimony showing the policy was actually executed on September 2nd is incompetent and that the date mentioned in the policy, namely, August 27th is controlling. We have examined the authorities cited and are of opinion that the testimony showing the real transaction between these parties is competent. It will be noted that defendant in error

is admittedly a fraternal beneficial society, organized and existing under the laws of Ohio.

Sec 9465 GC, and kindred sections of the Code regulating fraternal associations of this nature must govern the respective rights of the parties to this transaction. This is not what is commonly known as an old line insurance company, and without citing authorities it is sufficient to say there is considerable difference between the rules of law applicable to those two different forms of insurance companies.

A fraternal organization is controlled by its constitution and the by-laws of the association; the application for membership, etc.

The application for membership which was executed by plaintiff in error and forwarded to defendant in error at its home office in Columbus, among other things contained this statement,—

"And I further covenant and agree that the insurance hereby applied for will not be in force until the delivery of the policy to me while I am in good health and free from all injury and I further understand and agree that the representative or any of the officers of the society are not authorized to extend credit or waive or modify any of the terms or conditions hereof."

The constitution and by-laws of defendant in error in force when this application was accepted provide, among other things:

"An applicant shall not become a beneficial member of any division, nor entitled to any benefits until his certificate has been delivered. No beneficial certificate shall be delivered to an applicant unless said applicant is in good health at the time of its delivery. Should such certificate be delivered to an applicant while not in good health, the same shall be null and void."

The policy in question contains a provision as follows:

"This policy, except Part 3, takes effect upon its actual delivery to the insured while in good health and free from injury."

The policy provides that the insured must be in good health when the policy is **actually** delivered. The constitution of the association provides that no beneficial certificate shall be delivered unless the applicant is in good health at the time of its delivery. The application which plaintiff in error made provides that the insurance

shall not be in force until the delivery to him of the policy while in good health and free from all injury. It is admitted that the insured was injured on August 29th.

We do not think the plaintiff in error is in any different position because the agent, in violation of the constitution and by-laws of the society, delivered this policy to him on September 3rd from what he would be had the agent complied with the rules of the society and withheld delivery of the policy.

From a consideration of the entire record we are of opinion that the judgment of the lower court was correct and the same should be affirmed.

ALLREAD, PJ, and HORNBECK, J, concur.