## VAN DE WATER v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.
### No. 1280A.

District Court, W. D. New York.
June 18, 1934.

Daniel F. Fitzgerald, of Rochester, N. Y. (John A. Millener, of Rochester, N. Y., of counsel), for plaintiff.

Harris, Beach, Folger, Bacon & Keating, of Rochester, N. Y. (E. W. Dillon, of Columbus, Ohio, and Charles S. Wilcox, of Rochester, N. Y., of counsel), for defendant.

KNIGHT, District Judge.

Edmund P. Van De Water died on May 18, 1933. The defendant issued a certificate of insurance to him on October 31, 1923. The application for insurance designated plaintiff as the beneficiary. Concededly death was caused by injuries intentionally inflicted in the course of a robbery or burglary.

At the time when the certificate of insurance was issued, the constitution of defendant contained this provision: "This Order shall not be liable to any person for any benefit for any death, disability or loss of time resulting from * * * murder, * * * injuries (fatal or otherwise) intentionally inflicted by others, (except where such injuries are inflicted for the sole purpose of burglary or robbery or by an insane person, the intent to commit burglary or robbery to be established by the claimant and the insanity to be established by a court having competent jurisdiction), or from voluntary exposure to unnecessary danger or to over-exertion (unless in an effort to save human life) * * *." Article IV, section 7.

The plaintiff contends that she is entitled to recover the death benefit in the amount of $6,300 by virtue of the provisions of that part of the constitution which has heretofore been quoted.

Prior to the death of insured, the constitution of defendant was amended, and at the time of death of insured it provided: "Nor shall the Order be liable to any person for any benefit for death, disability, loss of time, or any of the losses specified in Items 3 to 10 of Sections 4 and 5 of this Article resulting from * * * murder or disappearance, injuries intentionally inflicted by others resulting in death, or from voluntary exposure to unnecessary danger or to over-exertion (unless in an effort to save human life)." Article IV, section 9.

It will be noted that the amendment eliminated from the provision of the constitution in force when this policy was issued these words: "except where such injuries are inflicted for the sole purpose of burglary or robbery, or by an insane person, the intent to commit burglary or robbery to be established by the claimant and the insanity to be established by a court having competent jurisdiction."

It is admitted that the insured died as a result of injuries intentionally inflicted upon him by another for the sole purpose of burglary or robbery. It is the defendant's claim that the test of defendant's liability is measured by the provision of the constitution in force at the time of the death of insured, and that by reason of the fact that this amendment provides that the defendant shall not be liable for any benefit for death resulting from murder or injuries intentionally inflicted by others resulting in death, defendant is not liable in any amount on the certificate of insurance.

The question to be decided is whether the constitution and by-laws in force when the certificate of insurance was issued or the constitution and by-laws in force at the time of the death of deceased are controlling. At the outset it is important to distinguish between certificates of insurance issued by a fraternal benefit association, such as is this defendant, and certificates of insurance issued by the ordinary life or mutual insurance company. The original purpose of the organization of the Order of United Commercial Travelers of America was fraternal, social, and philanthropic. In this, as in similar organizations, as a natural outgrowth, there came a plan of indemnity or insurance for its members. The objects of this organization, as stated in its constitution in article I, section 2, among others, are: "To unite fraternally all Commercial Travelers * * *. Second. To give all moral and material aid in its power to its members * * *; Third. To establish funds to indemnify its members for disability or death resulting from accidental means. * * * Fifth. To elevate the moral and social standing of its members. * * * Sixth. To establish a Widows' and Orphans' Reserve Fund." It organized on the form of a supreme council and subordinate council. Its membership is limited in certain respects, and each of its members stands upon an equal footing in the subordinate councils. Each member has the right to vote; each on an equality with another. Dues are required to be paid, and provision is made for the appli-

cation of such toward the expenses and maintenance of the order and relief and other expenditures. Provision is made for the raising of funds for the several purposes stated. Provision is made for payments for the support of the lodge by assessments on each insured member in good standing and for increase in case of necessity of such assessments. A member without certain disqualification is entitled to insurance provided in the constitution. Certain classifications of insured members are provided. Insured in this case came within the so-called Class A group as distinguished from Class B group. Class A group included those who had not lost either hand, either foot, or the sight of either eye, were not deaf, subject to fits, or mentally infirm, who had no wound, injury, or disease rendering them especially liable to accident. Class B group includes all others. Article IV, section 4, of the constitution, at all times in question fixed the maximum benefits under Class A insurance certificates as $6,300 in case of death. If entitled to recover, plaintiff is entitled to recover that amount.

The application for insurance herein, signed by Edmund P. Van De Water dated October 31, 1923, among other provisions, contains this: "I hereby agree to accept the Certificates of Membership and Insurance issued upon this application, subject to all the provisions, conditions, and limitations of the Constitution, laws, rules and regulations of said Order as they now exist or as they may hereafter be added to, revised or amended."

The certificate of insurance issued to Edmund P. Van De Water provides that: "Edmund P. Van De Water, a member of The Order of United Commercial Travelers of America, in consideration of the statements contained in his application for insurance and the application fee paid by him, is hereby accepted as an Insured Member of said Order under 'Class A' * * * and is entitled to all the rights and benefits which may be provided for such 'Class A' Insured Members in and by the Constitution of said Order in force and effect at the time any accident occurs subsequent to said time and date." And: "This certificate, the Constitution, By-Laws and Articles of Incorporation of said Order, together with the application for insurance signed by said Insured Member, shall constitute the contract between said Order and said Insured Member and shall govern the payment benefits; and any changes, additions or amendments to said Constitution, By-Laws or Articles of Incorporation, hereafter duly made, shall bind said Order and said Insured Mem-

ber and his beneficiary or beneficiaries, and shall govern and control the contract in all respects."

The constitution provides that members shall be considered in good standing "only so long as they pay fees, fines, costs, dues and assessments charged * * * support the principles of the Order and faithfully observe its Constitution, By-Laws, Rules and Edicts * * * as such Constitution, By-Laws, Rules and Edicts now exist, or as they may hereafter be added to, revised or amended." Article II, section 4. The constitution also provides the method by which the constitution and by-laws or articles of incorporation may be amended. Article XIV, sections 1 and 2. No question is raised here as regards the regularity of the proceedings by which the amendment in question was adopted. It presumably was adopted by the vote of the several councils in one of which the insured had the right to vote as a member.

It is my opinion that the authorities support the conclusion that the rights of the parties are to be determined by the terms of the constitution and by-laws in force and in effect on the date of the death of the insured. It is my conclusion that the defendant had the right to make such changes in its constitution and by-laws that may be said fairly to be reasonable and that the amendment in question was a reasonable change.

The certificate of insurance is an agreement between the insurer and the insured. It specifically provides that any changes, additions, or amendments to the constitution thereafter made would bind both insurer and insured. This was a condition of the agreement for insurance. The language could hardly be more specific or definite. If the terms of the agreement have any force, they must be construed to give the insurer the right to make reasonable changes. This is the specific purpose of the limitation in the policy. No vested right is invaded. Supreme Lodge of Fraternal Union of America v. Light (C. C. A.) 195 F. 903; Order of United Commercial Travelers of America v. Smith (C. C. A.) 192 F. 102; Tisch v. Protected Home Circle, 72 Ohio St. 233, 74 N. E. 188; United Order of Foresters v. Miller, 178 Wis. 299, 190 N. W. 197, 29 A. L. R. 1526; and Zerbel v. Supreme Assembly, 199 Wis. 298, 226 N. W. 288, present cases in which it was held that the provisions of the constitution in force at the time of insured's death were controlling.

In Supreme Lodge of Fraternal Union of America v. Light, supra, an amendment prohibited members from engaging in the sale of malt liquors and provided that the members so engaging forfeited all rights to indemnity. The opinion cites many cases supporting the rule that insured is bound by any reasonable change. In Order of United Commercial Travelers of America v. Smith, supra, the constitution was amended to exclude from indemnity for any loss in cases where there were no visible marks on the bodies of the dead or injured. This case is quite directly in point. In Tisch v. Protected Home Circle, supra, a by-law was enacted subsequent to the issuance of the policy. It provided that the policy should be void if insured died by suicide or certain other causes. Insured committed suicide. Payment of the death benefit was refused. The court held that since the application contained the agreement of the insured to conform to "all laws, rules and usages of the Order then or thereafter in force" and that such compliance was an express condition upon which the insured was entitled to participate in the beneficiary funds, such by-law became a condition of the contract and, if broken, defeated recovery thereunder. The by-law was held a reasonable condition upon which the parties to the contract might agree.

McKinney v. Order of United Commercial Travelers, 124 Ohio St. 139, 177 N. E. 206, 208, cited by plaintiff, if considered an authority on the question there presented, is clearly distinguishable from Tisch v. Protected Home Circle, 72 Ohio St. 233, 74 N. E. 188, 191. We find this language in the opinion: "The Court of Appeals stated in its opinion that it was compelled to affirm the judgment of the trial court upon authority of McGovern v. Brotherhood of Locomotive Firemen & Enginemen, 85 Ohio St. 460, 98 N. E. 1128, and Tisch v. Protected Home Circle, 72 Ohio St. 233, 74 N. E. 188. However, in each of those cases there is a sharp distinction from the instant record upon the facts." The court points out that in each of these last-mentioned cases there was an agreement on the part of the insured to be bound by the "laws, rules and usages of the order now in force or which may be adopted hereafter" (Tisch Case) and "by-laws that may be hereafter enacted" (McGovern Case). In Tisch v. Protected Home Circle, supra, Weber v. Supreme Tent of Knights of Maccabees of The World, 172 N. Y. 490, 65 N. E. 258, 92 Am. St. Rep. 753, is distinguished.

In Pold v. N. A. Union, 261 Ill. 433, 104 N. E. 4, an amendment to the by-laws provided for forfeiture if insured was a suicide. It was held to govern liability on a policy is-

sued prior to its enactment, and in Zerbel v. Supreme Assembly, 199 Wis. 298, 226 N. W. 288, 29 A. L. R. 1526, an amendment cancelling old age benefit was held to be controlling over terms of a policy issued before the member became of required age. It is clear from these decisions and many others that the courts look upon policies of insurance issued by organizations such as this as different in effect from policies issued by strictly insurance companies. Insured occupies a different relation to a fraternal organization of which he is a member with the right to actively participate in all its activities and the purpose of which includes something more than insurance, than the insured in a so-called old insurance company, or mutual company whose business is solely insurance. While Supreme Lodge, Knights of Pythias, v. Mims, 241 U. S. 574, 36 S. Ct. 702, 704, 60 L. Ed. 1179, decided the question of the right to amend to increase rates, the language of the opinion goes much further than that. "We assume without argument that by section 3 of the charter, and his assent thereto, the plaintiff became a member of the organization, with whatever rights he might have as such. * * * Persons who join institutions of this sort are not dealing at arm's length with a stranger whose mode of providing for payment does not concern them, but only his promise to pay. They are joining a club the members of which have to pay any benefit that any member can receive. * * * More than ambiguous words in an amendable law would be needed to establish a departure from the ground on which the relation of the parties obviously stood, and to create a privilege that attacked the corporation in its very life." The following cases are in point: Shelton v. American Insurance Union, 41 Ohio App. 512, 181 N. E. 497; Railway Mail Ass'n v. Weir, 24 Ohio App. 5, 156 N. E..921; Sovereign Camp of Woodmen v. Latham, 59 Ind. App. 290, 107 N. E. 749; Supreme Council of Royal A. v. McKnight, 238 Ill. 349, 87 N. E. 299; Apitz v. Supreme Lodge, Knights & Ladies of Honor, 274 Ill. 196, 113 N. E. 63; L. R. A. 1917A, 183; Supreme Lodge, Knights of Pythias of The World, v. Knight, 117 Ind. 489, 20 N. E. 479, 3 L. R. A. 409; Scow v. Supreme Council, Royal League, 223 Ill. 32, 79 N. E. 42.

The decisions of state courts holding that the right to amend does not extend to a change in rates were expressly repudiated in Supreme Lodge, Knights of Pythias, v. Mims, 241 U. S. 574, 36 S. Ct. 702, 60 L. Ed. 1179. The ruling therein was followed in Supreme Lodge, Knights of Pythias, v. Smyth, 245 U. S. 594, 38 S. Ct. 210, 62 L. Ed. 492, and Steuernagel v. Supreme Council of Royal Arcanum, 234 N. Y. 257, 137 N. E. 320.

It is true that support for plaintiff's contention is to be found in some decisions in the state courts. Many state court decisions are cited by plaintiff. It will be found that many of these are based on facts that are not parallel with those presented here, and many recognize the rule applied here in this determination. In Olson v. Modern Woodmen of America, 182 Iowa, 1018, 164 N. W. 346, L. R. A. 1918F, 1164, after insured had disappeared an amendment to the by-laws was made providing that proof of actual death must be shown. The court held this amendment unreasonable since it prevented claimant from making proof under the statutes of presumptive death. The decision was, in part at least, based on the fact that insured disappeared before the enactment of the amendment and so had no opportunity to know of the change. Here insured was in a position to know and to withdraw. In Goehlke v. Hawkeye Commercial Men's Association, 198 Iowa, 144, 197 N. W. 1004, 35 A. L. R. 1177, the basis for the decision was that the amendment did not apply to the cause which resulted in insured's death. In Johnson v. Home Mutual Ins. Co., 191 Iowa, 535, 181 N. W. 244, the change was inserted in the copy of the application accompanying the policy, and it was not in the original. Aside from this consideration, the change was of such substance as to largely vitiate any coverage. In Donaldson v. Supreme Council, Catholic Benevolent Legion (Sup.) 180 N. Y. S. 598; Wright v. Knights of the Maccabees, 196 N. Y. 391, 89 N. E. 1078, 31 L. R. A. (N. S.) 423, 134 Am. St. Rep. 838; Evans v. Southern Tier Masonic Relief Ass'n, rev 182 N. Y. 453, 75 N. E. 317; Knack v. Supreme Council of Royal Arcanum, 131 Misc. 842, 228 N. Y. S. 330, the amendments in question sought to reduce the amount of the benefit.

It is asserted that this policy is to be construed in accordance with the laws of the state of New York where this application was made and signed. Any question in this regard has been settled adversely to this contention by Supreme Council of Royal Arcanum v. Green, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771, reversing 206 N. Y. 591, 100 N. E. 411. This decision has been followed in McClement v. Order of Foresters, 222 N. Y. 470, 119 N. E. 99; Steuernagel v. Supreme Council of R. A., 234 N. Y. 257, 137 N. E. 320; Haynes v. Fraternal Aid Union (D. C.) 34 F.(2d) 305, and

Modern Woodmen of America v. Mixer, 267 U. S. 544, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384.

Section 232 of the Insurance Law of the State of New York (Consol. Laws, c. 28) was added in 1911 (Laws 1911, c. 298). Many of the decisions of the courts of New York cited as holding subsequent amendment invalid as against prior issued certificates of insurance were rendered prior to this amendment of the statute. This section specifically provides, among other things, that "the constitution and laws of the society and the application for membership and medical examination, signed by the applicant, with all amendments to each thereof, shall constitute the agreement between the society and the member."

It is claimed that the trend of recent decisions in the New York courts has been away from the former holdings because of this amendment. The Ohio statute (Gen. Code Ohio, § 9469) contains the same provision as section 232. The courts of neither state seem to lay any stress on this particular provision. In effect it is a declaration only that an agreement between the parties is binding upon the parties. Despite these provisions and since their enactment the courts have held that reasonable amendments do not invalidate a certificate theretofore issued.

The amendment in question is to be construed in accordance with the laws of the state of Ohio. As so construed by courts of that state and the Federal courts, this amendment is binding upon the insured.

The further claim is made on behalf of the plaintiff that irrespective of the effect of the amendment, the defendant is liable on the policy because the constitution in force in 1933 provided that the order would only be exempt from such items in the insuring clause as came within items 3 to 10 of section 4 and 5 of this article, and further that insured voluntarily exposed himself to unnecessary danger in an effort to save a human life—his own human life. It is clear from the reading of the exemptions specified in section 9 of article IV of the constitution that there are many other exemptions than those included within items 3 to 10 of sections 4 and 5 of that article. These particular items refer to losses of specific members of the body. In the exemptions are included losses by reason of death, disability, and loss of time, different and separate from the losses specified in items 3 to 10. An illustration of the distinction is found in the statement that these exemptions relate to death, disability, or loss resulting from intentionally self-inflicted injuries (fa-

tal or otherwise), and self-destruction (while sane or insane).

Section 9 exempts the defendant from liability in the case of "injuries intentionally inflicted by others resulting in death, or from voluntary exposure to unnecessary danger or to over-exertion, unless in an effort to save human life." A reading of this portion of the section is sufficient to show that the reference to "human life" is to life other than the insured. This is the only reasonable interpretation. Even conceding plaintiff's contention, it could hardly be said that the insured voluntarily exposed himself to save his own life. "Voluntarily" means the will to do something. Certainly insured did not will to so expose himself. These contentions made by the plaintiff with reference to the exemptions under the provisions of the constitution of 1933 cannot be sustained.

A decree may be entered dismissing the complaint, with costs.