**REX v. LOCOMOTIVE ENGINEERS MUTUAL LIFE AND ACCIDENT INSURANCE ASSOCIATION.**

Municipal Court of Cleveland.

No. A-139934.

**OPINION**

By JACKSON, J.

This cause came on to be heard before the court upon the petition, amended answer and reply, agreed stipulation of facts, briefs, and oral argument.

The plaintiff herein Mary M. Rex, seeks through her petition to recover from defendant, The Locomotive Engineers Mutual Life and Accident Insurance Association the sum of Three Thousand Dollars ($3,000.00) with interest thereon from November 19, 1948,, as beneficiary under two certificates of life insurance issued by defendant to E. H. Rex, deceased husband of plaintiff, while said E. H. Rex was a member of defendant association. It is the claim of plaintiff that said certificates were in full force and effect at the time of the assured's death November 17, 1948.

The defendant through its amended answer denies the right of plaintiff to recover on said certificates for the reason that the assured E. H. Rex, had failed to pay the assessments provided by the Association's by-laws since October, 1933. To this amended answer the plaintiff has filed her reply denying the allegations in the defendant's amended answer by reason of which the defendant seeks to avoid payment thereon.

The facts as agreed upon by the parties in the stipulation to the court are as follows:

1. E. H. Rex became a member of The Locomotive Engineers Mutual Life and Accident Insurance Association, a fraternal benefit society, on November 1, 1885, at which time said Association was an unincorporated association known as "The Locomotive Engineers Mutual Life Insurance Association." At said time E. H. Rex applied for and received from said Association two certificates of insurance, each in the amount of $1500.00. The original application and certificates have been lost and cannot be produced. At said time the by-laws of The Locomotive Engineers Mutual Life Insurance Association provided, in part, as follows:

"Any member failing to pay an assessment when ordered, as provided in the By-laws, or within the prescribed time, shall forfeit his membership and shall forfeit all right and title he or his heirs may have to any benefit or claim in or against this Association."

The said Insurance Association was incorporated on March 1, 1894. On April 22, 1914, the original certificates were replaced by two other similar certificates, each in the amount of $1500.00, bearing numbers 19955 and 19956, copies of which

certificates (not including the endorsement on the reverse side thereof) are attached to plaintiff's petition. On April 22, 1914, the constitution and by-laws of defendant Association provided, in part, as follows:

"The regular application blank prepared and issued by this Association furnished to and signed by the applicant, the policy issued thereon, and the by-laws in force at that time or as amended from time to time, shall form the basis of the contract between this Association and the insured."

2. The said E. H. Rex died on the 17th day of November 1948. At the time of his death, and at all times mentioned in the petition herein, the said E. H. Rex was a member in good standing in the Brotherhood of Locomotive Engineers, an unincorporated labor organization. The said E. H. Rex was survived by his widow, Mary M. Rex, plaintiff in this action. The plaintiff herein is the same person named as Mary M. Rex in the two certificates of life insurance numbered 19955 and 19956, copies of which are attached to plaintiff's petition. Defendant admits due notice and proof of death of said E. H. Rex.

3. The Locomotive Engineers Mutual Life and Accident Insurance Association is a fraternal benefit society incorporated under the laws of the State of Ohio without capital stock organized and carried on for the mutual benefit of its members and their beneficiaries and not for profit, and having a lodge system with ritualistic work and representative form of government. Membership in said Association is limited to persons who are and remain members of the Brotherhood of Locomotive Engineers, all members of which Brotherhood at the time of their admission thereto must be locomotive enginemen in active service as such.

4. At all times mentioned in the petition prior to October 1, 1933, all of the certificates or policies of insurance of said Association were issued upon the assessment plan, under which plan all members, regardless of age, paid the same amount per month per unit of insurance carried.

5. Effective July 1, 1921, the constitution and by-laws of said Insurance Association were amended by the addition of the following provision:

"All insurance certificates that have been in force continuously forty (40) years or more shall be 'Paid-up' certificates from and after July 1st, 1921."

Prior to the adoption of said quoted provision neither the constitution and by-laws of said Association nor certificates issued by it provided for any form of paid-up certificate.

6. The said E. H. Rex paid all assessments required upon the aforementioned certificates issued to him from November 1, 1885 to November 1, 1925, the amounts of such assessments being the same as those required of all other members of the Association carrying certificates in the same amounts as the said E. H. Rex.

7. In accordance with the provision of the constitution and by-laws effective July 1, 1921 quoted above, the aforesaid certificates numbered 19955 and 19956 having been continuously in force for 40 years on November 1, 1925, became "Paid-up" certificates, and on or about said last mentioned date there was placed upon said certificates the endorsement shown on the reverse side of the copies of said certificates attached to the petition as EXHIBITS "A" and "B." Said endorsement was made on said certificates solely as a consequence of the amendment to the constitution and by-laws as above quoted.

8. In the year 1930 The Locomotive Engineers Mutual Life and Accident Insurance Association, by action of the convention held in that year, eliminated from its constitution and by-laws the aforequoted provision concerning 40-year certificates becoming "Paid-up" certificates, but at said time members of said Insurance Association whose certificates had theretofore become 40-year paid-up certificates were not required to pay assessments thereon. All members whose certificates thereafter became in force continuously for 40 years were required to continue to pay assessments thereon.

9. In 1933, and effective as of October 1, 1933, The Locomotive Engineers Mutual Life and Accident Insurance Association, by action of its convention, adopted amendments to its constitution and by-laws, which provided, in part, as follows:

"* * * on and after October 1, 1933, each and every member in good standing (or who is reinstated within 60 days thereafter) who holds a Certificate of Insurance issued prior to said date, shall pay monthly payments per One Thousand Dollars of Insurance at the premium rate indicated in.the following tables, according to the attained age of such member reckoned to nearest birthday on the 1st day of October, 1933, and the making of such monthly premium payments shall be compulsory regardless of the provisions in any By-Law heretofore in effect granting paid-up insurance after 40 years of membership or otherwise, or providing for assessments carried or to be carried for the member by the Association."

"The President and General Secretary-Treasurer are authorized to issue benefit certificates * * * upon such plans as. shall be deemed by said officers to be for the best interests of the Association, provided that any and all insurance features. in such certificates shall have premium rates and values based upon the American Experience Table of Mortality and/or approved disability tables. The interest assumption in computation of premium rates and reserves on all such certificates. shall not exceed 3½% per annum."

10. The aforesaid certificates numbered 19955 and 19956 contained the following provision:

"Any member of this Association neglecting or refusing to pay any assessment when ordered as provided in the by-laws. * * * shall forfeit all right and title to membership and be debarred from further participating in this insurance or benefits arising from the same."

11. On October 1, 1933 the said E. H. Rex was 71 years of age, and the premium rate in the tables mentioned in the aforementioned provision of the constitution and by-laws effective October 1, 1933, applicable to a member 71 years of age was and is $1.045 per month for each $100.00 of insurance carried. The said E. H. Clark Rex was fully informed of the adoption of the adequate reserve plan of insurance by the aforesaid Insurance Association and of the amendment to defendant's constitution and by-laws effective October 1, 1933. as stated above. On and after October 1, 1933 the said E. H Rex refused to pay any payments or premiums on the aforesaid certificates numbered 19955 and 19956, and did not pay any assessments, dues, premiums or rates of any kind or in any amount to the defendant Association on or after October 1, 1933 on the said numbered certificates.

12. Said E. H. Rex refused to surrender said numbered. certificates to said defendant Insurance Association, refused to take out new insurance at his then age of 71 years or to pay the rates for new insurance at his attained age of 71 years, and refused to pay assessments, dues, premiums or rates of any kind on any form of insurance to defendant Association on and after October 1, 1933.

13. It is further stipulated and agreed that this case is. submitted to the court upon the petition, the amended answer. the reply, and this stipulation of facts, the defendant reserving and preserving its exceptions, as set forth in its amended answer, to the order of the court entered in this cause on or

about November 15, 1949, in respect of plaintiff's motion to strike certain portions of defendant's answer.

Plaintiff bases her right to recover principally upon two contentions:

1. That the assured, by virtue of the 1921 amendment to the By Laws of defendant Association and the endorsement on the certificates of "Paid-up" after having been continuously in force for forty years, on November 1, 1925 acquired a vested interest in said certificates which defendant Association could not impair by a later amendment such as was enacted to become effective October 1, 1933.

2. That even if an amendment could be effective as to the rights of an assured such amendment must be reasonable and the October 1, 1933 was unreasonable and confiscatory.

We shall discuss these contentions briefly.

1. Did the assured through the issuance by the defendant of "Paid-up" certificates pursuant to the 1921 amendment acquire a vested interest in said certificates such as could not be impaired by subsequent amendment?

In support of her contention plaintiff cites **McKinney v. Order of United Commercial Travellers of America, 124 Oh St, 139** decided June 10, 1931.

This action was instituted in the Common Pleas Court of Franklin County and was based upon an insurance certificate issued by the defendant therein to one Francis W. McKinney who became a member thereof in December, 1901 and was accidently killed on November 25, 1927. Judgment for the defendant was affirmed by the Court of Common Pleas and thereafter the matter came before the Supreme Court. Speaking through Judge Allen the Supreme Court said:

"The pertinent language of the application signed by McKinney on November 14, 1901, and received at the office of the supreme council December 17, 1901, reads as follows:

"I hereby agree with the said order that I have read and will comply with the requirements of its articles of incorporation, constitution and by-laws, which, with this statement, shall be the basis of membership between myself and the said order. * * * I also agree that any misstatement or concealment of any fact shall cause a forfeiture of my membership in said order, and shall also cause, as to myself, and my beneficiary or beneficiaries, a forfeiture of all rights to indemnity, and to the recovery of anything whatsoever on account of any certificate, which may be issued by me by said order. I also agree that the said order shall not be liable to me, or my beneficiary or beneficiaries, in any manner

under any certificate of membership which may be issued to me, except for bodily injuries sustained through external, violent and accidental means, and except as provided in the constitution and by-laws."

"The certificate thereupon was issued by the order, and stated in its material portions that McKinney 'is entitled to all of the rights and privileges of membership accruing to him under the constitution and he is hereby recommended to the fraternal courtesy of the brotherhood wheresoever dispersed.' Neither the application nor the certificate made any reservation as to the future enactment of by-laws or amendments to the constitution. The assured did not agree in the application to be bound by after-enacted regulations, nor was the certificate based upon any such agreement."

The Court of Appeals had affirmed the judgment of the trial court upon authority of **McGovern v. Brotherhood of Locomotive Firemen and Enginemen, 85 Oh St, 460;** and **Tisch v. Protected Home Circle, 72 Oh St 233.**

However, the Supreme Court of Ohio distinguished these cases from the McKinney case, because in the Tisch case referred to above, the decedent agreed in his application to be bound by the

"Laws, rules and usages of the Order nor in force or which may hereafter be adopted."

In the McGovern case above the applicant agreed to be bound by

"By-laws that may be hereafter enacted."

Judge Allen then goes on to point out that the McKinney application contained no such agreement and therefore the insurance contract was based upon the By-laws and constitution in existence at the time of the application and the Supreme Court concludes, therefore, that the decedent was not bound by amendments subsequent to his original application and acceptance into membership since his application contained no such agreement.

In the instant case the original application of November 1, 1885 when decedent became a member and the certificates issued at that time can not be found but the By-Laws at that time had the following provision, "any member failing to pay an assessment when ordered, as provided in the By-Laws, of within the prescribed time, shall forfeit his membership and shall forfeit all right and title he or his heirs may have to any benefit or claim in or against this association."

When the original certificates were replaced by two other certificates, copies of which are attached to plaintiff's petition, on April 22, 1914, the constitution and by-laws provided as follows: "The regular application blank prepared and issued by this Association furnished to and signed by the applicant, the policy issued thereon, and the by-laws in force at the time or as amended from time to time, shall form the basis of the contract between this Association and the insured."

We therefore do not have the same situation here as obtained in the McKinney case. The decedent herein as far as we are able to ascertain from the stipulation of facts, agreed to be bound by the by-laws then in force or as amended from time to time. Thereafter in 1921 he accepted the terms and conditions set forth in the amendment of 1921.

Can the plaintiff now be heard to complain because of a still later amendment of 1933? We think not.

We believe that under the facts submitted the decedent was subject at all times to subsequent amendments unless clearly unreasonable. The defendant in support of its contention that the privilege granted to the insured of exemption from dues and assessments, which was conferred by a by-law enactment made thirty-six years after the insured became a member may be withdrawn by a subsequently enacted by-law set forth the following argument, "(1) that the insured's original contract contained no provision for paidup insurance; (2) that the original contract did contain a provision that if the member failed to pay any assessment as provided in the by-laws or within the prescribed time he should forfeit all right and title to any benefit or claim against the Association; (3) the fact that when the insured accepted the new certificate in 1914 said certificate also contained the provision that any member refusing to pay any assessment as provided in the by-laws should forfeit all right and title to membership and be debarred from further participating in the insurance or benefits arising therefrom; (4) that at the time the insured accepted the new certificate issued by the defendant the constitution and by-laws of defendant provided that the by-laws in force or as amended from time to time should form the basis of the contract.

As is hereinafter shown, either with or without a provision in the by-laws (number [4] above) that by-laws as thereafter amended shall form a part of the contract, the privilege of exemption in this case was one which was conferred by a by-law enacted years after the original contract was made and may be removed by a subsequently enacted by-law."

We are in accord with this contention.

This brings us to the second contention of the plaintiff that the amendment of 1933 was unreasonable and confiscatory.

A long line of decisions held that there is a presumption of reasonableness in the By-laws of fraternal benevolent associations such as the defendant.

The history of fraternal benefit associations operating under an assessment plan shows that they were unable to operate successfully until they adopted an adequate rate basis which took into consideration the American Experience Table of Mortality and in all of the cases the courts have held that these associations and societies were justified in reorganizing and adopting an adequate rate basis for the assessments even though there might be a hardship imposed upon some of the members as a result of such change. In considering these matters the courts have taken into consideration that in a fraternal benefit society the insured are also the insurers and whatever benefits one benefits the other.

In Supreme Council v. Jordan, 117 Georgia 808, the court said:

"The society had the right to make reasonable by-laws. Under a certificate of this character the holder occupies toward the society a dual relation. He is a member of the corporation and as such bound by all reasonable by-laws enacted by the corporation, whether they come into existence before or after the issuance of his certificate. He also occupies the position of a person holding a contract with the society, and as such he stands upon the same footing as any other person making a contract with it. Both are bound by the terms of the contract. As a member he must comply with all the provisions of his contract, and the contract may stipulate that he shall be bound by by-laws; and if so, compliance with the by-laws becomes a duty under the contract. If, however, the contract provides for an obligation which is not in terms dependent upon by-laws, his rights as a contracting party are to be no more affected by the by-laws than if he were not a member of the corporation."

In The United Order of Foresters v. Miller, Wisconsin 1922, 190 N. W. 197,

"The issue involved the power of the organization to cancel a by-law providing for old age benefits. The court said, 'The Society was and can be no more than the fiscal agent of the members, their collector and their disburser. It can no more pay out more than the members furnish for that pur-

pose than can the fountain throw its spray higher than its source. * * *' It is urged on behalf of the holders of such old age disability certificates that the society is now estopped from asserting any right to consider the action taken in 1900 as anything but prospective in effect, by reason of its having failed to expressly declare that its action was affecting then existing contracts or from failing to directly notify such members of such a claim as is now asserted. The nature of the society, however, its representative form of government, the fact that such change did not affect any right for which such members had then paid any adequate consideration prevent the application of any principle of estoppel. Such promise of plaintiff was part of a policy, certain, if long continued, to wreck it, and the members of such a society have nothing approaching a vested right in a disastrous insurance system."

In Funk v. Stevens (Neb. 1918), reported in 169 N. W. 5, where the rates were increased in order to enable the association to meet the payments intended to be paid on the policies, the court said:

"Courts will not undertake to direct or control the internal policy of such societies. It is only when there is an abuse of their discretionary powers—an unreasonable and arbitrary invasion of private rights—that the courts interfere: 'Now, if there is any one obligation of the society more binding upon it or its members than another, it is the promise made in the statement of the objects of the order to pay each member's beneficiary $2,000 upon his death. In morals and in law that promise must, if possible, be kept. The member must not forget that he is an insurer as well as an insured. When the order is faced by inevitable financial ruin for want of funds impossible to be raised under the existing rule of assessment, no member can disassociate his certificate or contract and insist that the object of the fraternity is to pay him in full without reference to his fellow members.'"

As was said in Case v. Supreme Tribe of Ben Hur (Neb. 1921) 184 N. W. 75:

"It is also true that in the absence of averment or proof to the contrary, it will be presumed that an increase of rates or change of plan of assessment to increase revenues was reasonable as to the amount of the increase in the charges, when it appears that the amended regulation was duly enacted by the association."

Defendant also cites two cases involving the defendant which have been decided by the Courts of Pennsylvania and New York. One is the so-called Moon case entitled Moon v. Locomotive Engineers Mutual Life and Accident Insurance Association decided by Supreme Court of Pennsylvania January 6, 1942 and reported in 23 Atlantic 2nd, 474 and the Quigley case entitled Quigley v. Locomotive Engineers Mutual Life and Accident Insurance Association and reported in 244 Appellate Division 513, 279, New York 858 and affirmed by New York Court of Appeals 273.

The Moon case held,

"Where an incorporated, mutual protective and fraternal benefit society issued paid up beneficial certificates to a member in accordance with a by-law providing for paid up certificates after membership in society for forty years, and society thereafter adopted an amendment to by-laws providing that all members holding certificates should make monthly payments, the amendment was applicable to paid up certificates and did not, when applied to certificates, 'impair' contractual rights of parties, and hence beneficiaries could not recover on certificates after member's death where member had been given notice of amendment and did not resume payment or exercise option to take new certificates for a fraction of amount of old certificates."

The Quigley case held,

"Furthermore, defendant deprived Quigley of none of his rights under his original certificates. They called for payment of assessments during life. At one time defendant granted him the gratuitous favor of releasing him from the payment of assessments. By the amendment of 1933 defendant did no more than to withdraw that favor, the benefit of which he had enjoyed for some years."

The court thereupon comes to the following conclusion. That the plaintiff's decedent was bound by subsequent amendments enacted by the defendant and said amendments were reasonable; that not having complied with the terms of the 1933 amendment plaintiff's decedent was in default at the time of his death and plaintiff can not recover. The court thereupon finds and enters judgment for the defendant.